IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 27, 2010 Session

## MICHAEL WAYNE MAPLES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Blount County**
**No. C-15142     Jon Kerry Blackwood, Judge**

**No. E2009-02558-CCA-R3-PC - Filed October 13, 2010**

The petitioner, Michael Wayne Maples, appeals from the Blount County Circuit Court's denial of his petition for post-conviction relief attacking his convictions of two counts of especially aggravated kidnapping on the basis of the ineffective assistance of trial counsel. On appeal, he contends that trial counsel was ineffective in the investigation and presentation of evidence concerning his mental health. Discerning no error, we affirm the order of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE, J., joined. JOSEPH M. TIPTON, P.J., filed a separate concurring opinion.

Andy Long, Maryville, Tennessee, for the appellant, Michael Wayne Maples.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee Turner, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ellen Berez, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Blount County Circuit Court jury convicted the petitioner of two counts of especially aggravated kidnapping and two counts of aggravated assault. At sentencing, the trial court merged the aggravated assault convictions into the especially aggravated kidnapping convictions and imposed two concurrent sentences of twenty-five years' incarceration. This court affirmed the convictions on direct appeal. *See State v. Michael W. Maples*, No. E2002-02691-CCA-R3-CD (Tenn. Crim. App., Knoxville, Mar. 19, 2004).

The petitioner's convictions involve the December 5, 2001 abduction at

gunpoint of the petitioner's estranged wife, Benita Cotte, and her paramour, Jeffrey McKee. The relevant facts are as follows:

> Jason Nance, a detective for the Blount County Sheriff's Department at the time of the incident, testified that at 8:00 a.m. on December 5, 2001, he responded to a dispatch relating a footchase by Officer Terry Orr. He said that later that day, he interviewed the defendant, who stated the following: He and Ms. Cotte were married but separated and having marital problems. The defendant had waited at Ms. Cotte's apartment for an hour before she and Mr. McKee left for work. He wanted to talk to his wife and would do anything necessary to talk to her. The defendant had a sawed-off shotgun and jumped into the back of Mr. McKee's car. He made Mr. McKee put handcuffs on Ms. Cotte and then forced Mr. McKee into the trunk of his own car. Ms. Cotte convinced the defendant to let Mr. McKee go but the defendant told Mr. McKee that if he called the police, he would kill Ms. Cotte. The defendant said that Ms. Cotte was later able to signal a passing police officer for help and the defendant ran from the scene. Detective Nance testified that a loaded, sawed-off shotgun was found in the passenger-side floorboard of Ms. Cotte's car after the incident.

*Id.*, slip op. at 1-2. As testified to by several witnesses, including the victims and Ms. Cotte's mother, this incident occurred, after Ms. Cotte asked for a divorce, in the wake of the defendant's repeated threats to kill Ms. Cotte and "anyone who was with her." *Id.*, slip op. at 2-4.

On August 25, 2004, the petitioner filed a timely pro se petition for post-conviction relief alleging that he was denied the effective assistance of counsel at trial and on direct appeal. Following the appointment of counsel and amendment of the petition, an evidentiary hearing was held concerning the allegations that trial counsel was ineffective in failing to investigate and present a diminished capacity defense and in failing to present mental health evidence as mitigation at sentencing.

Although the petitioner did not testify at the post-conviction evidentiary hearing, he did testify at a hearing for the approval of expert services, and his testimony was considered by the post-conviction court. At the motion hearing, the petitioner admitted that he committed a burglary of a business at the age of 14. At the age of 16, he spent "two or three nights" in his girlfriend's front yard "waiting on her to come out and talk to [him]"

because he thought she was "messing around on [him]." Following that incident, the petitioner attempted suicide and was evaluated at Lakeshore Mental Health Facility. Testing at Lakeshore showed that the petitioner had an intelligence quotient (IQ) of 64. In 1992, the petitioner qualified for social security disability benefits, and further testing confirmed his IQ of 64.

Concerning his especially aggravated kidnapping convictions, the petitioner testified that he told trial counsel that he needed a mental evaluation because he thought he might suffer a nervous breakdown. He recalled that trial counsel told him that "nobody has ever won a case through mental evaluations." The petitioner said that, prior to the especially aggravated kidnapping offenses, he had pushed his wife to the floor. He explained that he was not trying to hurt her and that he only wanted to talk to her. On cross-examination, the petitioner admitted that he was not suffering from any hallucinations or other psychotic symptoms at the time of the offenses.

Blount County Attorney Michael Meares testified at the evidentiary hearing that he reviewed trial counsel's complete file in order to form an opinion regarding trial counsel's representation. Mr. Meares noted that two things relevant to pretrial preparation were lacking in the file: there were no notes concerning the petitioner's background and social history, and there was no correspondence concerning plea offers. Mr. Meares opined that trial counsel was deficient in failing to investigate and present evidence concerning the petitioner's mental state for three distinct purposes: as a tool in plea negotiations, to negate the mens rea of the offense, and as mitigation at sentencing. However, he acknowledged that the petitioner testified at trial that he "must not have been in his right mind." He also noted that the offenses did not occur on the "spur of the moment" in light of proof that the petitioner wore pantyhose over his face, wore gloves, and used handcuffs and a shotgun during the commission of the offenses.

Trial counsel explained that he suffered from congenital cataracts; therefore, he did not take notes while interviewing clients. He recalled that the State offered the petitioner a plea agreement that included a total effective sentence of twenty years. The petitioner did not want to accept any plea offers because he did not think he was guilty of anything. Trial counsel determined that the best strategy would be to present the petitioner as sympathetically as possible given the fact that he found his wife with another man. The theory of defense was to portray the petitioner as "'the wronged man.'"

Trial counsel testified that he gave "considerable thought" to a mental health defense. He decided against a mental health defense for numerous reasons. First, the petitioner had been convicted previously of an offense involving a girlfriend when he waited in her yard for three days and ultimately attempted suicide. Second, the petitioner had given

the police a very detailed statement that was consistent with the testimony of the victims. Third, the petitioner, although "of limited intelligence," never displayed any signs of incompetency and "appeared to be normal and lucid" throughout all of their meetings. Fourth, the petitioner detailed the events leading up to the offenses, including his relationship with his wife and his purchase of the shotgun. Concerning the petitioner's planning of the offenses, trial counsel noted that the petitioner "was very rational" in his recollection of the events. Fifth, trial counsel feared that delving into mental health evidence would expose the petitioner to findings that would warrant consecutive sentences, which were otherwise avoided. Finally, trial counsel stated that his "experience [of practicing since 1973] has been that raising mental defenses in this district simply doesn't work." In summary, trial counsel testified that the petitioner was "obviously competent" and that his previous incident involving his girlfriend was "eerily similar" to these offenses, which he feared would cause the present offenses to be perceived as aggressive behavior that was escalated between this earlier incident and the incident at issue. Based upon all of these concerns, trial counsel decided not to pursue a mental health defense or to present mental health evidence as mitigation at sentencing.

Naomi Pratt, the petitioner's mother, testified that the petitioner was a "slow learner" who "tried his best to get along with people and to do what's right. But at times . . . he'd just get a little frustrated at things." She said that she assisted the petitioner in qualifying for social security disability benefits because he was "kindly mental because of all the problems he's had." The petitioner's sister, Tresa Jean Arms, testified similarly that the petitioner would "get really disturbed and aggravated really bad" in difficult situations. She testified that the petitioner really loved his wife and that, leading up to the offenses, his wife "started acting like she didn't even care nothing about him no more."

Doctor David Bender, a clinical psychologist, testified that he reviewed the petitioner's mental health records. He described the petitioner as a "fairly mild man." He opined that the petitioner's records revealed "a pattern of difficulty," particularly in relationships. Although Doctor Bender did not perform an evaluation of the petitioner, he said that the petitioner's mild mental retardation would have affected his reasoning ability and that the petitioner should not be considered dangerous for sentencing purposes. On cross-examination, Doctor Bender denied that the petitioner's arrest history revealed a pattern of escalating behavior – remarking that the petitioner was merely "inept in his dealings" with others.

Although the post-conviction court found that trial counsel failed to obtain the petitioner's mental health records, the post-conviction court also found that trial counsel made a reasonable and strategic decision not to pursue a mental health defense and not to present mental health evidence in mitigation at sentencing. The post-conviction court found

that, based upon trial counsel's observations of the petitioner, the petitioner's previous altercation with a girlfriend, the petitioner's detailed recollection of the offenses, and trial counsel's overall experience, the decision to forego the presentation of a mental health defense was reasonable. Accordingly, the post-conviction court denied relief.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19

S.W.3d 762, 766 (Tenn. 2000).

The record supports the post-conviction court's findings of fact. We further agree with the post-conviction court that trial counsel's strategy to forego the presentation of a mental health defense at trial or as mitigation at sentencing was reasonable, and, therefore, not deficient. Thus, the petitioner failed to establish his allegation of ineffective assistance of counsel. Accordingly, the order of the post-conviction court is affirmed.

_____

JAMES CURWOOD WITT, JR., JUDGE